[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action asking that a marriage be dissolved. All jurisdictional requirements for its maintenance have been met.
The parties intermarried at Stratford, Connecticut on May 1, 1971. There are three children issue of the marriage — Shawn, born June 14, 1972; Karen, born January 14, 1975; and Megan, born December 1, 1980. The marriage has broken down irretrievably with no hope of reconciliation. It is dissolved. The plaintiff was the sole cause of the breakdown. The defendant did not contribute in any way to the breakdown.
The marriage was uneventful until Megan was born. The plaintiff worked and the defendant stayed at home. The parties saved and advanced their economic situation as the years passed. They are now living in a house at 26 Driftwood Lane in Shelton.
Shawn has reached his majority and is no longer living at home. Karen will reach her majority shortly and is living at home.
Megan is now 12 years old. She was not planned and her birth caused problems between the parties. In addition, she has nocturnal enuresis. She is still a very little girl emotionally, and, when she was about to testify, could not and could only say "I want to live with my mommy."
Sometime in 1990 the plaintiff began watching adult movies and then wanted the defendant to engage with him in the sexual techniques displayed on the films. The defendant tried but did not like what the plaintiff wanted to do and eventually refused to continue the practices. Then the plaintiff found a female companion who would accede to his desires in that regard. They frequented a motel in the Waterbury area for their rendezvous beginning at the end of February 1991. The plaintiff apparently became conscious stricken and on April 18, 1991 told the defendant what he was doing. The defendant did not know anything about what was going on and was devastated by the revelation. She was not able to speak, could not sleep and could not believe what she had just learned. The plaintiff told her he wanted the marriage to continue. However, the following week he told her he could not get his paramour out of his mind and nothing she would do would change his mind. The defendant did not want the marriage to be over and was not in favor of divorce. She did not want a divorce and asked him for another chance to try to make the marriage work. Later the plaintiff told the defendant he had changed his mind again. The discussion between CT Page 790 them went back and forth 6 or 7 times. At the end of May 1991 the defendant asked him to go to marriage counselling and he agreed. They went 3 or 4 times but had violent fights after each session. The plaintiff then started seeing his girl friend again. He brought this action asking for a divorce and returned the papers to court on June 20, 1991.
At that time, the plaintiff had abandoned all chances to save the marriage. He told the defendant she was only good for taking out the garbage. At one point he put his face one foot away from the defendant's and screamed in her face: "You are good for nothing, a rotten mother, doing a horrible job raising the children and frumpy looking." By the end of the year he realized what he had done and on December 24, 1991 he gave her a letter in which he said she was "a beautiful and devoted wife" and that he had "three wonderful children and a nice home and a good job." It was a sad epilogue to his marriage. By that time the defendant did not want to reconcile with him or have anything to do with him.
The family homestead located at 26 Driftwood Lane in Shelton is awarded to the defendant who shall take the property subject to the first mortgage only, which the plaintiff will have paid current to the date of this Memorandum of Decision.
The contents of the family homestead shall all be the property of the defendant except for the plaintiff's clothing and personal effects.
The defendant shall retain her 1990 Mitsubishi car.
The defendant shall retain her IRA of approximately $700 dollars.
The defendant shall retain her Derby Savings checking account of approximately $700 dollars.
The plaintiff shall retain his Derby Savings checking account of approximately $200 dollars, the 200 shares Specialty Pkg Pr. Stock of approximately $10,000 dollars, and the Advest account IRA of approximately $13,500 dollars, his Derby Savings Bank IRA of approximately $3845 dollars, and the Specialty Packaging Pension Plan which has a cash value as of 1/1/92 of $23,223.57.
The plaintiff shall continue the defendant on his health insurance as long as the law allows and the plaintiff shall pay for CT Page 791 the cost of said insurance.
The plaintiff shall pay to the defendant alimony in the sum of $300 dollars per week via wage execution which the plaintiff's attorney shall effectuate forthwith. The defendant earning the net sum of $325 dollars per week will not constitute a basis for modification.
Custody of the minor children shall be with the defendant with reasonable rights of visitation in the plaintiff.
The plaintiff shall continue to provide health insurance for the minor children and all uninsured medical and dental expenses of the minor children shall be paid by the plaintiff.
The plaintiff shall pay to the defendant the sum of $275 per week for the support of the minor child Megan who will be 18 years old on December 1, 1998.
The plaintiff shall maintain on his life, life insurance in the sum of $100,000 dollars naming the defendant as beneficiary of the same. Proof of the existence of said coverage shall be provided to the defendant on request.
The plaintiff shall pay to the date of the divorce all utility bills including heat, light, water, phone, cable, home and car insurance and the sum of $275 per week as ordered by the court pendente lite.
The plaintiff shall pay to the defendant's attorney the sum of $5000 dollars within 30 days as a contribution towards the defendant's counsel fees.
The plaintiff shall vacate the family homestead within 2 weeks of the date of the Memorandum of Decision.
THOMAS J. O'SULLIVAN, TRIAL REFEREE